IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| INTERFACE, INC.; INTERFACE AMERICAS, INC.; INTERFACEFLOR LLC; and FLOR, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. _____ |
| J&J INDUSTRIES, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Interface, Inc., Interface Americas, Inc., InterfaceFlor LLC, and

FLOR, Inc. (collectively "Plaintiff" or "Interface") file this Complaint and Jury

Demand against Defendant J&J Industries, Inc. ("J&J")[1], and state as follows:

---

[1] Interface filed a Complaint shortly after midnight today (February 26, 2013) with papers showing the contents of the Patent. *See Interface, Inc., et al. v. J&J Industries, Inc.*, No. 4:13-cv-00045-HLM.  Interface is filing the present Complaint with a copy of the Patent as issued, and in an abundance of caution, because of the apparent malfunction of the Court's computer.  The Notice of Electronic Filing records the entry of the documents as February 26, 2013, but records the filing of the documents as February 25, 2013.  The receipt for payment of the filing fee, moreover, clearly shows that the original Complaint was filed after midnight on February 26, 2013, in accordance with the Court's Electronic Filing of Case Initiating Documents User's Manual and CM/ECF tutorial on filing case initiating

## NATURE OF ACTION AND PARTIES

1.     This is a complaint for damages and equitable relief arising from J&J's acts of infringement of United States Patent No. 8,381,473 (the "Patent").  A true and correct copy of the Patent is attached hereto as Exhibit A.

## THE PARTIES

2.     Plaintiff Interface, Inc. ("Interface") is a corporation organized and existing under the laws of Georgia with its principal place of business at 2859 Paces Ferry Road, Suite 2000, Atlanta, Georgia 30339.  Interface is the ultimate

---

documents, as well case law holding that a patent issues just after midnight on the day of issuance. Electronic Filing of Case Initiating Documents User's Manual, p. 5 (filing is accomplished upon completion of steps that come after the payment of the filing fee through pay.gov); *see Encore Wire Corp. v. Southwire Co.*, No. 3:10-cv-86-BMGL, 2011 WL 833220, at *4 (N.D. Ga. Mar. 4, 2011) (holding that a patent issued at midnight on the date of issuance). The original Complaint, however, was dated by the Court's computer February 25, 2013, and the Clerk has stated that a Court order will be necessary to correct the Court record to show filing on February 26, 2013.  If a dispute as to standing, jurisdiction, or venue should arise, Interface reserves the right to rely on the time shown on the receipt from Pay.gov, in combination with the Court's User Manual, tutorial and sequence of screens presented to a filer of case-initiating documents, to dispute the filing date shown on the Notice of Electronic Filing. If the Court finds it appropriate that the Complaint electronically filed between 12:03 a.m. and 12:05 a.m. on February 26, 2013 should be deemed filed on February 25, 2013, Interface respectfully requests that it be permitted to withdraw the original Complaint, and that this Complaint be deemed filed on February 26, 2013 at the earliest time filing was possible.

- 2 -

parent company of Plaintiffs Interface Americas, Inc., InterfaceFLOR LLC, and FLOR, Inc.

3.      Plaintiff Interface Americas, Inc. ("Interface Americas") is a corporation organized and existing under the laws of Georgia with its principal place of business at 2859 Paces Ferry Road, Suite 2000, Atlanta, Georgia 30339. Interface Americas is in the business of selling floor covering products, including carpet tiles.

4.      Plaintiff InterfaceFLOR LLC ("IFS") is a corporation organized and existing under the laws of Georgia with its principal place of business at 2859 Paces Ferry Road, Suite 2000, Atlanta, Georgia 30339.  IFS is in the business of manufacturing floor covering products, including carpet tiles.

5.      Plaintiff FLOR, Inc. ("FLOR, Inc.") is a corporation organized and existing under the laws of Georgia with its principal place of business at 2859 Paces Ferry Road, Suite 2000, Atlanta, Georgia 30339.  FLOR, Inc. is in the business of selling floor covering products, including specifically carpet tiles.

6.      Interface is the current assignee and owner of the Patent and is entitled to enforce all rights arising therefrom, including the right to prevent infringement of the Patent.  Interface has exclusively licensed all rights under the Patent to Interface Americas, including the right to enforce the Patent.  Interface Americas

- 3 -

has entered into exclusive sublicenses with IFS and Flor, Inc., each of which includes Patent enforcement rights.

7.     Defendant J&J is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business at 818 J&J Drive, Dalton, GA 30722, and may be served through its registered agent, James David Jolly, at 818 J&J Dr., Dalton, GA 30721.  Defendant J&J is in the business of manufacturing and/or selling floor covering products, including connectors for joining adjacent modular floor covering units, in interstate commerce and in this judicial district, and is a direct competitor of Interface.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a), because this is a case arising under the patent laws of the United States (35 U.S.C. § 1, *et seq.*, and particularly 35 U.S.C. § 271), and also pursuant to 28 U.S.C. § 1331, because this matter involves a federal question.

9.     This Court has personal jurisdiction over J&J because J&J resides within this judicial district and because J&J has, either directly or through agents located in this judicial district, made, used, sold, offered for sale, marketed, distributed, or imported into the United States products that infringe, either directly or indirectly, the Patent.

- 4 -

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and § 1400(b) because J&J resides in this judicial district within the meaning of such provisions and has transacted business and committed acts of patent infringement in this judicial district.

## FACTUAL BACKGROUND

11.     In the mid-1970s, Interface was a pioneer in the use of textile-faced modular floor coverings known as carpet tiles or modular carpet in the United States.  Interface was instrumental in creating what has grown to be a thriving market for carpet tiles, both commercial and residential.  Interface continues to innovate in this area, ever improving carpet tile technology and leading and expanding the market for carpet tiles.

12.     Carpet tiles can be used in wall-to-wall installations or as area rugs that do not cover the entire flooring surface.  They offer many advantages over traditional wall-to-wall, or broadloom, carpet and traditional, one-piece area rugs.

13.     One aspect of carpet tiles, however, is that they are relatively light, and in a "free lay" (*i.e.*, unsecured) installation they are prone to slide and shift positions when exposed to foot traffic, rolling loads, or even the swaying of tall buildings.  This shifting can displace the tiles and create gaps at the carpet tile seams.  Before the invention of the Patent, this issue was addressed by gluing

- 5 -

carpet tiles to the floor—applying a layer of glue (usually to the floor, but sometimes preapplied to the back of the carpet tile) and then positioning the carpet tiles on the floor.  This method of installation requires glue across the entire flooring surface, with attendant material costs and labor costs.

14.   Using glue to install carpet tiles presented a number of additional problems.  Glue gives off fumes that can affect indoor air quality.  Before the glue goes on the floor, the entire underlying flooring surface must be cleared, cleaned, and prepared, and then after applications it must be left undisturbed while the glue dries and cures.   Installation in, for example, a commercial office building generally requires that the entire area be closed off and unavailable for use during preparation, adhesive curing, and carpet installation.  Further, when tiles that have been glued down are removed from a flooring surface, glue residue or even portions of the tile backing may remain on the flooring surface, requiring removal to create a smooth surface before new carpet tiles (or other flooring) can be installed.  Glue residue also can stick to the back of the removed carpet, along with adhered dirt, dust, small rocks or flakes of concrete, which make it more difficult to recycle these tiles.  The difficulties related to removing and replacing carpet tiles that have been installed in this manner further increase the costs (both labor and material) of installation with glue.

- 6 -

15.    Given the high material costs and labor costs of directly adhering carpet tiles to the underlying flooring surface, and further given that installation methods such as using double or single-sided tape or indirect attachments did not sufficiently hold tiles in place to prevent gaps between adjacent tiles, Interface decided to develop an installation alternative that would provide greater efficiency, both in terms of costs (labor, material, environmental) and function (holding the tiles in place to prevent shifting and creation of gaps between carpet tiles).

16.    After substantial research and development, the Interface inventors discovered that it was not necessary to adhere its carpet tiles directly or indirectly to the underlying flooring surface.  Rather, it was possible to create a stable installation in which individual tiles stayed in place relative to each other in an array by securing the tiles one to another.  This was achieved using connectors having certain combinations of characteristics that attached to the undersides of adjacent tiles and spanned across the adjacent tile edges.  Linking the tiles together in this manner with these connectors created an installation in which gaps do not develop between tiles.

US2008 4378453 6

17. The connectors that Interface invented and patented are known as TacTiles® connectors and/or FlorDots™ connectors.[2]

18. Using TacTiles® connectors for carpet tile installation significantly reduces the time needed to prepare floors for installation and to install tiles. It also significantly reduces the business disruption previously associated with carpet tile installation. These advantages, as well as the environmental benefits of avoiding the use of glues, have made TacTiles® connectors tremendously popular and successful.

19. As further alleged below, Defendant J&J has begun to market, to offer for sale, and to sell connectors based on Interface's TacTiles® connectors. J&J calls its products "TileTabs" connectors and advertises that they permit "glueless" installation to create a stable installation in which carpet tiles will stay in place. On information and belief, J&J's TileTabs connectors were designed by J&J employee Keith Gray. Mr. Gray formerly worked at Interface and was involved in Interface's development of TacTiles® connectors, and he is a named co-inventor of the Patent.

---

[2] For ease of reference, both TacTiles® connectors and FlorDots™ connectors are herein referred to as "TacTiles® connectors."

## PATENT AT SUIT

20.     On February 26, 2013, the United States Patent and Trademark Office duly and legally issued the Patent, entitled "System and Method for Floor Covering Installation" and naming Graham A. H. Scott, David D. Oakey, John P. Bradford, and Keith N. Gray as inventors.  The inventors assigned the Patent to Interface. Interface is listed as the Assignee on the face of the Patent.

21.     The Patent issued through a chain of continuation applications concluding with United States Patent Application No. 12/270,129 that was filed November 13, 2008, and published by the United States Patent and Trademark Office on April 16, 2009, as US 2009/0094919 A1 ("the '919 Published Application").

22.     The invention in the Patent relates to glueless installation of modular floor covering units, such as carpet tiles.  Before this invention, carpet tiles were almost universally glued to the floor to prevent them from slipping and creating gaps between tiles.  This invention enables carpet tiles to remain in their relative positions without the use of glue on the underlying floor.  This is done with small, thin plastic connectors, as further described in the claims of the Patent. Interface has achieved substantial commercial success and industry attention through its

carpet tile installations created with TacTiles® connectors, which are commercial embodiments of the claims of the Patent.

## DEFENDANT'S INFRINGEMENT

23.     Defendant J&J has directly infringed, or induced or contributed to the infringement of, the Patent by making, using, selling, or offering for sale in this judicial district and elsewhere or importing into the United States connectors, including its TileTabs connectors, that are used to create carpet tile installations that utilize, implement, practice, and/or contain each of the elements of at least one of the claims of the Patent.

24.     J&J's infringement has damaged Interface, in an amount yet to be ascertained, and has irreparably harmed, and continues irreparably to harm, Interface, including by usurping Interface's sales and business opportunities, eroding Interface's market share and prices, and damaging Interface's reputation and goodwill.

## COUNT I

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,381,473

25.     Interface realleges and incorporates by reference paragraphs 1–24 of this Complaint as if fully set forth herein.

US2008 4378453 6

26.     Defendant J&J has infringed and continues to infringe the Patent, either literally or under the doctrine of equivalents, by making, using, offering for sale, or selling products, including its TileTabs connectors, which are used to create carpet tile installations that embody each element of at least one of the claims of the Patent.

27.     J&J's past and continuing infringement of the Patent has damaged Interface in an amount to be determined at trial.

28.     J&J's past and continuing infringement of the Patent has irreparably harmed, and continues irreparably to harm, Interface.  J&J's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

29.     J&J's infringement has been and continues to be willful, intentional, and with knowledge of the existence of the '919 Published Application, Interface's continuation applications, and the Patent.  Interface is thus entitled to enhanced damages pursuant to 35 U.S.C. § 284, and attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT II

### INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NO. 8,381,473

30.     Interface realleges and incorporates by reference paragraphs 1–29 of this Complaint as if fully set forth herein.

31.     Defendant J&J has knowingly and intentionally induced, and continues knowingly and intentionally to induce, others in this judicial district and throughout the United States to create and use carpet tile installations that J&J knows to infringe the Patent, including by explicitly promoting and instructing that TileTabs connectors be used to create installations that are within the Patent claims.

32.     J&J's past and continuing inducement of infringement of the Patent has damaged Interface in an amount to be determined at trial.

33.     J&J's past and continuing inducement of infringement of the Patent has irreparably harmed Interface, and J&J's inducement of infringement will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

34.     J&J's inducement of infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '919 Published Application, Interface's continuation applications, and the Patent, such that Interface is entitled to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

US2008 4378453 6

## COUNT III

### CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 8,381,473

35.     Interface realleges and incorporates by reference paragraphs 1–34 of this Complaint as if fully set forth herein.

36.     Defendant J&J has contributed to the infringement of the Patent and continues to do so by making, using, offering for sale, or selling products, including its TileTabs connectors, which J&J specially manufactures, promotes for use, and uses for creating carpet tile installations that embody each element of at least one of the claims of the Patent.

37.     J&J's past and continuing contributory infringement of the Patent has damaged Interface in an amount to be determined at trial.

38.     J&J's past and continuing contributory infringement of the Patent has irreparably harmed and continues irreparably to harm Interface, and J&J's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

39.     J&J's contributory infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '919 Published Application, Interface's continuation applications, and the Patent, such

- 13 -

that Interface is entitled to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## REQUEST FOR JURY TRIAL

Interface hereby requests a trial by jury on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Interface respectfully requests that the Court:

A.    Declare that J&J has directly infringed, induced others to infringe, and/or contributed to the infringement of the Patent, and that J&J has willfully infringed Interface's patent rights, as asserted herein;

B.    Preliminarily and permanently enjoin J&J from directly infringing, inducing others to infringe, or contributing to the infringement of the Patent, pursuant to 35 U.S.C. § 283, including by specifically prohibiting J&J from marketing, using, manufacturing, offering for sale, or selling TileTabs connectors;

C.    Order J&J to confirm that it has destroyed its entire inventory of connectors used for infringing installations, including by specifically ordering J&J to confirm that it has destroyed its inventory of TileTabs connectors;

D.    Order J&J to issue a corrective press release in industry publications, including at least Floor Focus magazine, Floordaily.net, and Floor Covering Weekly, stating that Interface has exclusive patent rights in glueless installations

- 14 -

created with connectors such as TacTiles® connectors and further advising the public that TileTabs connectors are being removed from the market;

E.     Award Interface damages in an amount to be proved at trial to compensate Interface for damages caused by J&J's direct and indirect infringement of the Patent;

F.     Treble the damages awarded to Interface, as provided by 35 U.S.C. § 284;

G.     Award Interface its reasonable attorneys' fees and litigation expenses, as provided by 35 U.S.C. §285;

H.     Award Interface prejudgment interest and costs pursuant to 35 U.S.C. § 284; and

I.     Award Interface such other and further relief as the Court may deem appropriate.

US2008 4378453 6

Respectfully submitted, this 26th day of February, 2013.

/s/ Matthew M. Lubozynski

William H. Boice
Georgia Bar No. 065725
Candice Decaire
Georgia Bar No. 209815
Matthew M. Lubozynski
Georgia Bar No. 140968
Joshua H. Lee
Georgia Bar No. 489842

OF COUNSEL:

KILPATRICK TOWNSEND &
STOCKTON LLP

Kevin C. Gallagher
Georgia Bar No. 282855
INTERFACE, INC.
Suite 2000
2859 Paces Ferry Rd.
Atlanta, Georgia  30339
(770) 437-6867

Suite 2800
1100 Peachtree Street
Atlanta, Georgia  30309-4530
Phone: (404) 815-6500
Fax: (404) 815-6555

ATTORNEYS FOR PLAINTIFFS

US2008 4378453 6